**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

AIRGAS, INC.

Plaintiff,

vs.

CRAVATH, SWAINE & MOORE, LLP

Defendant.

CIVIL ACTION NO: 10-612 (ECR)

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CRAVATH, SWAINE & MOORE LLP'S MOTION REQUESTING THAT THE COURT ABSTAIN AND/OR STAY CONSIDERATION OF PLAINTIFF'S PETITION FOR A PRELIMINARY INJUNCTION WHILE THE SAME UNDERLYING ISSUE IS BEING CONSIDERED IN PROCEEDINGS PENDING IN THE DELAWARE CHANCERY COURT

NANCY J. GELLMAN (I.D. No. 12472)
JOHN A. GUERNSEY (I.D. No. 25730)
ROBERT N. FELTOON (I.D. No. 58197)
NICHOLAS M. CENTRELLA (I.D. No. 67666)
Conrad O'Brien PC
1515 Market Street, 16th Floor
Philadelphia, PA 19102-1921
Tel.: (215) 864-9600
Fax: (215) 864-9620

*Attorneys for Defendant*
*Cravath, Swaine & Moore LLP*

# TABLE OF CONTENTS

**Page**

Table of Authorities ..... ii

Preliminary Statement ..... 1

Relevant Background ..... 5

Argument ..... 9

A. Airgas's Motion to Disqualify Cravath From the Delaware Litigation Should Be Decided by the Delaware Court. ..... 11

B. The Delaware Chancery Court Is Uniquely Well-Suited to Decide the Issues Presented By Airgas's Petition. ..... 12

C. Allowing the Delaware Court To Proceed First Will Promote Judicial Economy and Avoid Inconsistent Results. ..... 13

D. The Proposed Abstention Will Not Prejudice Airgas. ..... 14

Conclusion ..... 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

Armstrong v. Pomerance,
423 A.2d 174 (Del. 1980) ....................13

Bechtel Corp. v. Local 215, Laborers' Int'l Union,
544 F.2d 1207 (3d Cir. 1976)....................10

Burford v. Sun Oil Co.,
319 U.S. 315 (1943)....................10

Cheyney State Coll. Faculty v. Hufstedler,
703 F.2d 732 (3d Cir. 1983)....................10

Chiropractic Am. v. LaVecchia,
180 F.3d 99 (3d Cir. 1999)....................10

Colo. River Water Conservation Dist. v. United States,
424 U.S. 800 (1976)....................10, 11

Ingersoll-Rand Fin. Corp. v. Callison,
844 F.2d 133 (3d Cir. 1988)....................10, 11

ITT Indus., Inc. v. Pac. Employers Ins. Co.,
427 F. Supp. 2d 552 (E.D. Pa. 2006) ....................10

Landis v. N. Am. Co.,
299 U.S. 248 (1936)....................9

Rohm and Haas Co. v. Dow Chem. Co.,
No. 4309-CC, 2009 WL 445609 (Del. Ch. Feb. 12, 2009)....................12, 14

**Statutes & Rules**

Del. R. P. C. 8.5 .................... 12

E.D. Pa. R. C. P. 5.1.5....................2

N.Y. R. P. C. 8.5 .................... 12

Pa. R. P. C. 8.5 .................... 12

Defendant Cravath, Swaine & Moore LLP ("Cravath") respectfully submits this memorandum of law in support of its Motion Requesting that the Court Abstain and/or Stay Consideration of Plaintiff's Petition for a Preliminary Injunction While the Same Underlying Issue Is Being Considered in Proceedings Pending in the Delaware Chancery Court, which court has been presented with the issues raised by Airgas's petition in pending litigation between Airgas, Inc. ("Airgas") and Cravath's client, Air Products and Chemicals, Inc. ("Air Products"), in the matter of Air Products and Chemicals, Inc. v. Airgas, Inc. et al., C.A. No. 5249.

**Preliminary Statement**

This lawsuit is the latest effort by Airgas's officers and directors to entrench themselves and deny Airgas shareholders the opportunity to decide for themselves whether to accept an offer from Cravath's client, Air Products, to acquire their shares at a significant premium to the market price. In a maneuver that Airgas has planned for months, Airgas has sued Air Products' counsel, accusing the firm of breaching its fiduciary duties because it previously performed work for Airgas in a narrowly circumscribed set of debt financing-execution matters that have no bearing on the proposed acquisition. In addition to pursuing a spurious claim for damages against Cravath, Airgas seeks an emergency disqualification order precluding Cravath from representing Air Products in a first-filed lawsuit pending in Delaware Chancery Court and from advising Air Products with respect to the transaction that gave rise to the Delaware lawsuit.

Airgas's purported concern that there is imminent danger that Cravath will misuse Airgas's confidential information is unfounded. If there were any danger of Cravath sharing relevant confidential information, Airgas would have filed this action months ago, when Cravath told Airgas it would be representing Air Products in the proposed acquisition. Airgas elected not to seek relief back then, and its decision to sue Cravath within 24 hours after the public

announcement of Air Products' offer and the commencement of litigation in Delaware (1) severely undercuts the credibility of its claim that Cravath has confidential information that would be of value to Air Products; (2) severely undercuts Airgas's assertion that it is now in need of emergency equitable relief; and (3) demonstrates that this lawsuit is just another tactical move in a contest for corporate control.[1]

Air Products has been trying for several months to engage Airgas and its Board of Directors in a discussion concerning a potential combination of the companies' respective businesses. Airgas's Board of Directors has refused adequately to inform themselves about, or engage with Air Products to discuss, the offer. Given this refusal, after the markets closed on February 4, 2010, Air Products publicly announced a non-discriminatory, all-cash offer to purchase all outstanding Airgas shares at a 38% premium over that day's closing price. Shortly after that public announcement, Air Products filed the Delaware lawsuit against Airgas and its Board of Directors alleging that the Board's failure properly to consider Airgas's offer and inform its shareholders of that offer was a violation of their duty of loyalty to Airgas shareholders. Air Products properly filed its lawsuit in Delaware because that is the state where both companies are incorporated, whose laws govern the Delaware action, and whose courts routinely address such fiduciary duty claims.

The very next day, Airgas rushed to another jurisdiction, sued Cravath, and sought a temporary restraining order barring Cravath from continuing to represent Air Products. The

---

[1] Airgas has asserted that it could not have sued Cravath earlier because to do so would have revealed Air Products' earlier nonpublic offer, and thereby "put Airgas in play." That is not the case. If it really thought that Cravath had relevant confidential information that it would be imminently sharing with Air Products, Airgas could have sued Cravath in a court that permits filing under seal in appropriate circumstances. See, e.g., E.D. Pa. R. C. P. 5.1.5.

Court of Common Pleas of Philadelphia County, after briefing and a hearing, denied that petition for a restraining order on the basis that Airgas had not met its burden. Following Cravath's removal of that action to federal court, Airgas's petition for preliminary injunctive relief is now pending before this Court.

Cravath respectfully submits that the Court should abstain from hearing Airgas's petition for a preliminary injunction for at least the following reasons:

First, whatever this Court may ultimately decide with respect to Airgas's claim for money damages, Airgas's request for a preliminary injunction is the functional equivalent of a motion to disqualify Cravath from appearing before the Delaware Chancery Court. With all due respect, Cravath submits that a motion precluding counsel from appearing in Delaware Chancery Court is more appropriately decided by Chancellor William B. Chandler III, who presides over the first-filed Delaware litigation. Just as this Court has full authority over proceedings here, judicial comity warrants according Chancellor Chandler due authority over proceedings in his courtroom. In fact, the issue has already been presented to the Delaware Chancery Court by way of (1) an objection by Airgas to the pro hac vice admission of Cravath lawyers in the Delaware Court—on the very same grounds that Airgas seeks disqualification here,[2] and (2) an application by Air Products for a determination that Cravath may continue to serve as its counsel and appear in the Delaware action on its behalf.

Second, the Delaware Chancery Court is aptly suited to decide the key issue presented by Airgas's petition to this Court—whether Cravath should be disqualified. Indeed, the dispute

[2] The motions to admit Cravath attorneys were granted within hours of being made, and apparently prior to Airgas's registering its objection. Airgas's objection is thus effectively a request that the Chancery Court revoke the pro hac vice admission of the Cravath lawyers.

concerning Cravath's ability to represent Air Products is intertwined with the merits of the (first-filed) Delaware litigation. Furthermore, the Chancery Court is a renowned authority on the law applicable to Delaware corporations such as Airgas and Air Products and, just last year, decided the leading case concerning alleged conflicts of interest in the context of contested merger and acquisition ("M&A") transactions. Judicial efficiency would not be well served by having two courts address—on an emergency basis—the very same issue.

Third, whereas this Court's ruling on Airgas's petition for preliminary relief would be, by definition, provisional, the Delaware Chancery Court's ruling on the question of whether Cravath should be disqualified will be a final decision on the merits. Abstention by this Court would thus prevent potentially inconsistent results and would preserve this Court's resources.

Fourth, neither the proposed abstention, nor Cravath's continued representation of Air Products, will prejudice Airgas. There is every reason to believe that the Delaware Chancery Court will rule expeditiously on the question, and Cravath has made clear that it has not and will not use any nonpublic Airgas information in its representation of Air Products.

In light of these facts, and those set forth below, Cravath respectfully requests that this Court, as a matter of judicial comity and in the service of judicial economy, abstain from deciding Airgas's motion for a preliminary injunction and permit Chancellor Chandler to make the decision whether Cravath may continue to represent Air Products.

**Relevant Background**

Air Products has relied on Cravath's representation in corporate matters for over four decades. Over the course of that time, Cravath attorneys have counseled Air Products on a wide variety of general corporate issues, financings, and insurance coverage. (Affidavit of James C. Woolery, Exhibit A to this brief ("Woolery Aff.") ¶ 3.) Cravath has also advised Air Products on a number of major transactions, particularly acquisitions and divestitures. (Id.) In contrast, Cravath's periodic assignments for Airgas, the first of which was in 2001, were essentially confined to a narrow area. (Affidavit of Ronald Cami, Exhibit B to this brief ("Cami Aff.") ¶ 6.)

In the later part of 2009, Air Products contacted Cravath about Air Products approaching Airgas concerning a potential acquisition. (Woolery Aff. ¶ 4.) Because of the debt financing-execution work that Cravath had performed for Airgas, several Cravath partners held a series of discussions to determine whether the firm could represent Air Products in the contemplated transaction. (Woolery Aff. ¶ 5; Affidavit of C. Allen Parker, Exhibit C to this brief ("Parker Aff.") ¶ 4.) After careful review, they concluded that Cravath could represent Air Products in a potential Airgas acquisition so long as Cravath did not take on any new assignments for Airgas. (Woolery Aff. ¶ 6; Parker Aff. ¶ 5.) They also discussed the importance of adhering to Cravath's practice of establishing ethical walls between clients with potential conflicts. (Woolery Aff. ¶ 7; Parker Aff. ¶ 6.)

Cravath does not believe it has any confidential Airgas information that would assist Air Products in its effort to acquire Airgas; Cravath believes that the information about which Airgas purports to be concerned is not known to Cravath, is not confidential, or would not assist Air Products—or in many instances, some combination of the three. (Cami Aff. ¶¶ 2-31.) Furthermore, in connection with its representation of Air Products, Cravath has not used, and has

no intention of using, any information in the firm's possession that was obtained during Cravath's work for Airgas. (Woolery Aff. ¶¶ 8-10; Affidavit of Francis P. Barron, Exhibit D to this brief ("Barron Aff.") ¶¶ 5-6.) Indeed, Cravath has taken steps to ensure that it will not do so. (Affidavit of Stuart W. Gold, Exhibit E to this brief ("Gold Aff.") ¶ 12; Woolery Aff. ¶ 7; Cami Aff. ¶¶ 4-5, 33-43.) Cravath has assured Airgas that there is no danger of Cravath's advice to Air Products being based in any way on any information that Cravath may have acquired from the limited and unrelated work that it previously did for Airgas. (E.g., Gold Aff. ¶¶ 9, 11; see also Woolery Aff. ¶¶ 8-10; Barron Aff. ¶¶ 5-6.)[3]

By at least the end of October 2009, Airgas was aware that Cravath was representing Air Products in connection with a potential transaction. (Cami Aff. ¶ 37; Woolery Aff. ¶ 11.) In correspondence through November and December 2009, Cravath told Airgas that Cravath did not believe it was required to cease its representation of Air Products. (Gold Aff. ¶¶ 9, 11.) In addition, in December 2009, Cravath partner James Woolery was copied on a letter from the Chairman of Air Products, John McGlade, to the Chairman of Airgas, Peter McCausland, in which Air Products increased its offer to acquire all of Airgas's outstanding shares—thus confirming that Cravath was continuing to represent Air Products in connection with a proposed

---

[3] It is worth noting that the financial advisor to Airgas's Board in connection with its response to the Air Products proposal, Goldman Sachs, has been a long-time advisor to Air Products. Goldman has spent considerable time with the Air Products Board and senior management, as recently as October 2009, including annual meetings to review mergers and acquisitions matters such as prospects for future acquisitions. (Affidavit of Paul E. Huck, Exhibit F to this brief ("Huck Aff.") ¶ 8.) Air Products has not made an issue of this, however, because it is generally understood that, in the world of mergers and acquisitions, these situations arise frequently and are of little relevance to a board's actions in connection with a takeover offer or of any consequence to the outcome of takeover contests. (Id.) Air Products is confident that a reputable institution like Goldman Sachs knows well how to protect the confidential information of its current and former clients by instituting ethical walls, which is precisely what Cravath has done. (See id.)

acquisition. (Woolery Aff. ¶ 11.) And on February 1, 2010, Mr. Woolery contacted Airgas's legal advisors to inform them that Air Products was very serious about moving forward with a transaction. (Id.) At no time between October of 2009 and February 5, 2010, did Airgas file a complaint against Cravath.

On February 4, 2010, Air Products sent a public letter to Airgas announcing a non-discriminatory, fully financed, all-cash offer to purchase all outstanding Airgas shares for $60 per share—a 38% premium to that day's closing price of $43.53. (Exhibit G to this brief.) Later that evening, Air Products filed a Verified Complaint in the Delaware Chancery Court against Airgas and its Board of Directors, seeking declaratory and injunctive relief for the Board's breaches of its fiduciary duties to Airgas's shareholders—including Air Products. (Exhibit H to this brief.)

On February 5, 2010, just hours after Air Products announced its offer for Airgas to Airgas shareholders, Airgas sued Cravath in the Court of Common Pleas of Philadelphia County, filing a verified complaint, a petition for a special injunction (i.e., a temporary restraining order), a proposed order, supporting affidavits and a lengthy memorandum of law reflecting considerable legal research—papers that clearly had to have been prepared well in advance of February 5. (Exhibit A to Cravath's Notice of Removal, Feb. 12, 2010.) A few days later, Airgas's lead counsel in this case told the press that Airgas had been planning this lawsuit for "about two months."[4] The New York Times has reported that, because the purported conflict alleged by Airgas is "common" in this type of setting, and because Airgas has known about it for

[4] See Alison Frankel, "Cravath Sued for Breach of Fiduciary Duty in Airgas M&A Battle," AmLaw Litigation Daily, Feb. 8, 2010.

months, the lawsuit is merely a "sideshow."[5] The Philadelphia Inquirer similarly noted that Airgas's filing of this lawsuit was meant to "counter[]" Air Products' public offer and the Delaware litigation.[6]

On February 9, 2010, after the submission of supporting and opposing memoranda and affidavits, a hearing on Airgas's petition for a special injunction (to enjoin Cravath from representing Air Products in connection with the proposed transaction and in the Delaware litigation) was held in the Court of Common Pleas of Philadelphia County. The presiding judge in the Court of Common Pleas, Commerce Program (the Honorable Albert W. Sheppard) denied Airgas's petition for a special injunction. (Cravath's Notice of Removal, Feb. 12, 2010 ¶ 4.) During the hearing, Judge Sheppard expressed discomfort with Airgas's decision to sue in Pennsylvania in order to police the practice of lawyers before the courts of Delaware: "In essence, I would be saying to a lawyer you can't go to Delaware and represent your client. I find that difficult. I don't want to do that." (February 9, 2010 Hearing Tr. 37:19-22, Exhibit I to this brief.)

On February 11, 2010, Air Products amended its Delaware complaint against Airgas and its Board of Directors to address, among other things, the improper conduct that Airgas and its Board have undertaken in further breach of their fiduciary duties since the filing of Air Products' original complaint—including the decision to sue Air Products' counsel of choice. (Exhibit J to this brief.)

---

[5] See New York Times Dealbook, "Can Airgas Ride Out Air Products' Gale?," available at http://dealbook.blogs.nytimes.com/2010/02/08/can-airgas-ride-out-air-products-gale/.

[6] See Philadelphia Inquirer, "Air Products goes public in bid for Airgas," available at http://www.philly.com/inquirer/business/83701372.html?cmpid=15585797.

On February 12, 2010, Cravath removed this action from the Court of Common Pleas of Philadelphia County to this Court. (Cravath's Notice of Removal, Feb. 12, 2010.)

On that same day, in a letter to Chancellor Chandler of the Delaware Chancery Court (Exhibit K to this brief), Airgas registered its objection to the pro hac vice admission of the Cravath attorneys representing Air Products in the Delaware action based solely on Cravath's prior work for Airgas—precisely the same allegation on which the complaint in this Court is based. Although Airgas implies in its letter that its Pennsylvania action preceded the Delaware action, in fact the Delaware litigation was first-filed. Moreover, the complaint filed in the Delaware action attaches letters in which Airgas raised its concerns about Cravath's representing Air Products in connection with a potential acquisition of Airgas. (Exhibits C and E to the Feb. 4 Verified Complaint in Air Products and Chemicals, Inc. v. Airgas, Inc. et al., Exhibit H to this brief.) In response to Airgas's objection to the pro hac vice admission of Cravath lawyers, Air Products has filed in the Delaware action an "Application for a Determination that Cravath, Swaine & Moore LLP May Continue to Serve as Its Counsel and Appear In This Case on Air Products' Behalf." (Exhibit L to this brief.)

**Argument**

Principles of judicial comity and judicial efficiency strongly counsel that this Court abstain from deciding Airgas's petition for preliminary injunctive relief to permit the Delaware Chancery Court to address the question whether Cravath may continue to represent Air Products in the Delaware litigation.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). It is clear that, "[i]n

the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." Bechtel Corp. v. Local 215, Laborers' Int'l Union, 544 F.2d 1207, 1215 (3d Cir. 1976); see also Cheyney State Coll. Faculty v. Hufstedler, 703 F.2d 732, 737-38 (3d Cir. 1983).

As a matter of judicial comity, a federal court may stay an action before it and abstain in favor of a concurrent state proceeding if necessary to promote "wise judicial administration" or to resolve "questions of state law bearing on policy problems." Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 814, 818 (1976). Even where "the state-court litigation does not precisely correspond with the federal," a court may abstain where there is an "inextricable relationship of questions" with a pending suit in a foreign state court. Ingersoll-Rand Fin. Corp. v. Callison, 844 F.2d 133, 138 (3d Cir. 1988). Abstention is grounded in "the notion that courts should avoid making duplicate efforts or unnecessarily deciding difficult questions," and it is meant to "to avoid needless conflict with the administration by a state of its own affairs" and federal "intrusion into matters of local concern . . . which are within the special competence of local courts." Chiropractic Am. v. LaVecchia, 180 F.3d 99, 103-04 (3d Cir. 1999) (internal quotation marks and citations omitted); see also Burford v. Sun Oil Co., 319 U.S. 315, 332-34 (1943).[7]

[7] The same principles of judicial comity and economy are considered in the abstention standard applicable to declaratory judgment actions. In ITT Industries, Inc. v. Pacific Employers Insurance Co., this Court found that granting a stay on abstention grounds was appropriate where "[i]t would be inefficient for both [a] New York court and this Court to consider the same evidence, as would be necessary to resolve the issues pending before the two courts." 427 F. Supp. 2d 552, 562 (E.D. Pa. 2006). The Court also took note of the Third Circuit's instruction that district courts "should give serious consideration to the fact that they do not establish state law, but are limited to predicting it." Id. at 561 (internal quotation marks and citation omitted).

In deciding whether to grant a stay on abstention grounds, courts consider six factors, including: (1) which court first assumed jurisdiction over property if property is involved; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) which court first obtained jurisdiction; (5) whether federal or state law applies; and (6) whether the state court will adequately protect the federal plaintiff's interests. Ingersoll-Rand, 844 F.2d at 136; see also Colo. River, 424 U.S. at 818.

As a matter of judicial comity, and in the service of judicial economy, this Court should abstain from deciding Airgas's petition for a preliminary injunction because: (1) Airgas's petition is the functional equivalent of a motion to disqualify Cravath from representing Air Products before the Delaware Chancery Court, and that is a matter more appropriately reserved for the Chancery Court to decide; (2) since the disqualification question is intertwined with issues already before it, the Delaware Chancery Court is aptly suited to decide who may represent Air Products; (3) the Chancery Court's ruling on the disqualification motion will be final, unlike this Court's preliminary ruling on Airgas's petition; and (4) the proposed abstention will not prejudice Airgas.

A. Airgas's Motion to Disqualify Cravath From the Delaware Litigation Should Be Decided by the Delaware Court.

Airgas's preliminary injunction petition is the functional equivalent of a motion to disqualify Cravath from representing Air Products in the first-filed Delaware litigation. (See Airgas Objection to Pro Hac Vice Admission of Cravath Attorneys in Air Products and Chemicals, Inc. v. Airgas, Inc. et al., Exhibit K to this brief.) As noted, Airgas has already opposed Cravath's pro hac vice applications in the Delaware litigation and, in response, Air Products filed a motion seeking a determination by the Delaware court that Cravath may continue to represent it. (Exhibit L to this brief.)

Put simply, the issue of Cravath's ability to serve as Air Products' counsel is squarely before the Delaware court. And there can be no question that the Delaware court should have the right to decide that question. Notably, Rule 8.5 of the Rules of Professional Conduct of both Pennsylvania and Delaware strongly suggests that the question whether a lawyer should be disqualified due to an alleged breach of professional conduct rules belongs in the tribunal where the litigation "on the merits" is pending (here, the litigation between Airgas and Air Products). Pa. R. P. C. 8.5(b)(1) ("[F]or conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits [shall apply], unless the rules of the tribunal provide otherwise."); see also Del. R. P. C. 8.5(b)(1).[8] Thus the decision as to whether Cravath may represent Air Products in the Delaware Chancery Court proceeding before Chancellor Chandler is more appropriately made by Chancellor Chandler.

B. The Delaware Chancery Court Is Uniquely Well-Suited to Decide the Issues Presented By Airgas's Petition.

The Delaware court is uniquely well-suited to rule on the disqualification question, particularly because the dispute concerning Cravath's representation of Air Products is intertwined with issues of Delaware M&A law that lie at the heart of that Delaware litigation. The Delaware Chancery Court has special expertise in matters of Delaware corporations law and oftentimes deals with alleged conflicts of interests in contested M&A transactions. Just last year, Chancellor Chandler decided an important disqualification case that dealt precisely with the matter at issue in Airgas's petition. See Rohm and Haas Co. v. Dow Chem. Co., No. 4309-CC,

[8] Similarly, Rule 8.5(b)(1) of the New York Rules of Professional Conduct provides: "For conduct in connection with a proceeding in a court before which a lawyer has been admitted to practice (either generally or for purposes of that proceeding), the rules to be applied shall be the rules of the jurisdiction in which the court sits, unless the rules of the court provide otherwise." (N.Y. R. P. C. 8.5(b)(1).)

2009 WL 445609, at *1-3 (Del. Ch. Feb. 12, 2009). Given Chancellor Chandler's familiarity with disqualification motions in this context, Cravath has every reason to believe that he will address Airgas's concerns swiftly and decisively.

Moreover, given that Cravath is accused of breaching fiduciary duties owed to a Delaware corporation (i.e., Airgas), the state of Delaware and its courts have a heightened interest in the matter. See Armstrong v. Pomerance, 423 A.2d 174, 177 (Del. 1980) ("Delaware does have a significant and substantial interest in actively overseeing the conduct of those owing fiduciary duties to shareholders of Delaware corporations . . . . [J]udicial enforcement of statutory and non-statutory duties of fiduciaries have long played and continue to play a significant part in the development of Delaware's corporation law.").

C. Allowing the Delaware Court To Proceed First Will Promote Judicial Economy and Avoid Inconsistent Results.

It is equally clear that permitting the Delaware Chancery Court to address the disqualification question will result in judicial efficiency and prevent potentially inconsistent results. Chancellor Chandler's decision concerning whether Cravath should be disqualified will be a final decision on the merits. In contrast, Airgas's petition for a preliminary injunction seeks, by definition, only interim relief. There is no need for this Court to expend its resources deciding preliminary matters when the Delaware Chancery Court's consideration of the disqualification question would result in a final decision on the merits. Moreover, the proposed abstention will prevent the possibility of inconsistent results—and in particular, the possibility of

a preliminary ruling from this Court conflicting with a final ruling from the Delaware Chancery Court during a sensitive time in the course of the proposed transaction.[9]

D. The Proposed Abstention Will Not Prejudice Airgas.

The proposed stay will not prejudice Airgas. There is every reason to believe that Chancellor Chandler will be able to rule expeditiously on the disqualification question, as he has done in the past. In the Rohm and Haas case, Chancellor Chandler issued his ruling just hours after hearing oral argument. 2009 WL 445609, at *1.

Moreover, Airgas has not alleged, nor can it, any facts to support its conclusory assertion that it will be imminently harmed by Cravath's continued representation of Air Products. Cravath has assured Airgas that: (1) Cravath does not believe it has confidential Airgas information of any relevance to its representation of Air Products; (2) Cravath has not used any nonpublic Airgas information in its representation of Air Products; and (3) Cravath will not use any nonpublic Airgas information in its possession in its representation of Air Products. (E.g., Gold Aff. ¶¶ 9, 11; see also Woolery Aff. ¶¶ 8-10; Barron Aff. ¶¶ 5-6.) Airgas has never identified with any specificity (even under seal) what confidential information Cravath supposedly has or how that information could plausibly be used to assist Air Products, to Airgas's detriment, in connection with the proposed acquisition. Airgas's claims that it is in need of emergency relief also cannot be reconciled with the hard facts—Airgas waited more than three months after learning that Cravath was representing Air Products in connection with the proposed transaction to bring this lawsuit against Cravath. (Cami Aff. ¶ 37; Woolery Aff. ¶ 11.) And if Cravath had material non-public information that could inflict harm upon Airgas and were

[9] It is important to note that this has nothing do with Airgas's claim for damages based on an alleged breach of fiduciary duty, which does not require expedited treatment and can be dealt with on a normal litigation schedule.

going to use it (which is not the case), ending Cravath's representation of Air Products at this late stage would not prevent injury to Airgas in any event.

**Conclusion**

For all the foregoing reasons, Cravath respectfully requests that this Court abstain from deciding Airgas's petition for a preliminary injunction in deference to Chancellor Chandler and his decision on (i) Airgas's objections to the pro hac vice admission of Cravath lawyers for the purpose of representing Air Products in the Delaware Chancery Court; and (2) Air Products' Application for a Determination that Cravath, Swaine & Moore LLP May Continue to Serve As Its Counsel and Appear In This Case on Air Products' Behalf currently pending in Air Products and Chemicals, Inc. v. Airgas, Inc., No. C.A. No. 5249.

Dated: February 16, 2010

Respectfully Submitted,

By: s/*John A. Guernsey*

NANCY J. GELLMAN (I.D. No. 12472)
JOHN A. GUERNSEY (I.D. No. 25730)
ROBERT N. FELTOON (I.D. No. 58197)
NICHOLAS M. CENTRELLA (I.D. No. 67666)
Conrad O'Brien, PC
1515 Market Street, 16th Floor
Philadelphia, PA 19102-1921
Tel.: (215) 864-9600
Fax: (215) 864-9620

*Attorneys for Defendant*
*Cravath, Swaine & Moore LLP*

**CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below I caused to be served a true and correct copy of the foregoing Defendant Cravath, Swaine & Moore LLP's Motion Requesting That The Court Abstain And/Or Stay Consideration Of Plaintiff's Petition For A Preliminary Injunction While The Same Underlying Issue Is Being Considered In Proceedings Pending In The Delaware Chancery Court, Memorandum in support, exhibits and proposed Order by hand delivery and by e-mail, addressed to the following:

Stephen A. Cozen, Esquire
Jeffrey G. Weil, Esquire
Thomas G. Wilkinson, Jr., Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
scozen@cozen.com
jweil@cozen.com
twilkinson@cozen.com

Attorneys for Plaintiff

s/*John A. Guersney*
John A. Guernsey

Date: February 16, 2010