IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AIRGAS, INC., | : | CIVIL ACTION |
| | : | NO. 10-612 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CRAVATH, SWAINE & MOORE LLP | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                            FEBRUARY 22, 2010

Cravath, Swaine and Moore LLP ("Cravath") requests this Court to abstain and/or stay consideration of Plaintiff's petition for a preliminary injunction while the issue of Cravath's disqualification to represent a party in litigation in Delaware is being considered by the Delaware Chancery Court (doc. no. 4).

**I.   BACKGROUND**

This lawsuit is a tale of one law firm's representation of two different clients who are business competitors. When, how and under what terms and conditions the representation occurred are factual questions. The ultimate legal issue is whether the allegedly dual representation violated the rules of professional conduct and/or the fiduciary duty owed by the law firm to each of its clients.

1

Cravath is a New York-based law firm.  Airgas, Inc. ("Airgas") is a Delaware corporation with its principal place of business in Pennsylvania.  Air Products and Chemicals, Inc. ("Air Products") is a Delaware corporation with its principal place of business in Pennsylvania, located forty miles from Airgas.  Airgas and Air Products are competitors in the industrial, packaged gases business.  Cravath has provided legal representation to Air Products for over forty years.  Meanwhile, Airgas has been a client of Cravath for nine years.

The parties hotly dispute the nature of Cravath's representation of the parties, the scope of the representation and when Cravath's representation of Airgas came to an end.  Also in dispute is the nature of the information Cravath learned while representing Airgas.

These issues came to the forefront in the past five months when Air Products, with the assistance of Cravath, sought to engage Airgas in discussions about a possible merger of the two companies.  On February 4, 2010, when these initial overtures were rejected by Airgas, Air Products publicly announced an all cash offer to purchase all outstanding Airgas shares.  That same day, Air Products filed suit in the Delaware Chancery Court against Airgas and its Board of Directors alleging that their failure to consider Air Products' offer is a breach of fiduciary duty ("the Delaware Action").  Cravath is representing Air

Products in that action.

The very next day, on February 5, 2010, Airgas sued Cravath in the Philadelphia Court of Common Pleas for damages and also a special injunction (TRO) and preliminary injunction restraining Cravath from representing Air Products in the Delaware Action and from otherwise representing Air Products in the proposed acquisition of Airgas (the "Pennsylvania Action"). Airgas claims that Cravath violated Rule 1.7 of the Pennsylvania Rules of Professional Conduct[1] by simultaneously representing Airgas in financing related matters and advising Air Products on

---

[1] Rule 1.7 states: Conflict of Interest: Current Clients

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if: (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent.

Pa. R.P.C. 1.7.

a potential takeover of Airgas.  Airgas, in the Pennsylvania
Action, is seeking to enjoin Cravath from representing Air
Products in any matter related to the attempted acquisition of
Airgas, including banning Cravath from representing Air Products
in the Delaware Action.

Over the past two weeks, there has been rapid action in
this now two front legal battle.  On February 9, 2010, the
Honorable Albert Sheppard, of the Court of Common Pleas of
Philadelphia County, after hearing argument from counsel,
declined Airgas' request to grant a TRO and instead scheduled an
evidentiary hearing on a request for a preliminary injunction for
February 16, 2010.  Despite having won the initial scrimmage
before the Pennsylvania state court, on February 12, 2010,
Cravath removed the Pennsylvania Action to this Court (the
"Federal Action").  Immediately thereafter, Cravath moved for
this Court to abstain and/or stay the Federal Action pending
resolution of the issue of disqualification in the Delaware
Action.

Meanwhile, Airgas has moved to disqualify Cravath from
representing Air Products in the Delaware Action by filing a
motion in the Federal Action (doc. no. 18) and also objecting to
Cravath's representation of Air Products in the Delaware Action.

It is Cravath's motion to abstain and/or stay the
Federal Action pending resolution of the issue of Cravath's

4

disqualification in the Delaware Action that is before the Court at this time.

**II. Legal Standard**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). While the ordering of an indefinite stay can constitute an abuse of discretion, Dover v. Diguglielmo, 181 Fed. Appx. 234, 237 (3d Cir. 2006) (citing Landis, 299 U.S. at 255), the Court is, nonetheless, empowered to stay proceedings pending the outcome of related proceedings. See Standard Sanitary Mfg. Co. v. United States, 226 U.S. 20, 52 (1912) (trial court has discretion under the Sherman Act to determine whether to stay a civil action pending outcome of a criminal trial); Cofab, Inc. v. Phila. Joint Bd. Amalgamated Clothing & Textile Workers Union, AFL CIO-CLC, 141 F.3d 105, 110 (3d Cir. 1998) (declining to issue writ of mandamus reversing an order staying a federal action pending completion of related proceedings before the National Labor Relations Board); Commonwealth Ins. Co. v. Underwriters, Inc., 846 F.2d 196, 199 (3d Cir. 1988) (district court has discretion to stay litigation among non-arbitrating parties pending the outcome of a related arbitration).

"[The] decision [to stay litigation] is one left to the district court . . . as a matter of its discretion to control its docket." Mendez v. Puerto Rican Int'l Cos., 553 F.3d 709, 712 (3d Cir. 2009) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 n.23 (1983)). Generally, in the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues. Bechtel Corp. v. Local 215, Laborers' Int'l. Union of N. Am., AFL-CIO, 544 F.2d 1207, 1216 (3d Cir. 1976).

In determining whether a stay should be granted, the Court "must weigh competing interests and maintain an even balance." Landis, 299 U.S. at 254-55. Among the factors the Court must consider are whether the proposed stay would prejudice the non-moving party, whether the proponent of the stay would suffer a hardship or inequity if forced to proceed and whether granting the stay would further the interest of judicial economy. See id.

**III. Analysis**

This situation presents a compelling case for a temporary stay. CTF Hotel Holdings, Inc. v. Marriott Int'l., Inc., 381 F.3d 131, 138 (3d Cir. 2004) (the party proposing a stay "must state a clear countervailing interest to abridge a party's right to litigate.").

6

One, there will be no prejudice to Airgas, the non-moving party. The delay will be brief. Chancellor Chandler, of the Delaware Chancery Court, has indicated that he is ready to hear the motion for disqualification and that a decision would be rendered promptly. The Delaware Chancery Court will provide a highly desirable alternate forum, served by a capable and experienced judiciary, in matters of complex commercial litigation. Moreover, Delaware is in fact Airgas' state of incorporation and its general corporate law governs Airgas' business. Once the issue of disqualification is decided, the case would be returned to active status in this Court, where the remaining issues of damages would be addressed in the regular course of the Court's business.

Two, substantial hardship will befall an absentee, but important, party to this litigation. Air Products has not been sued in this action, therefore, Air Products is not present here. However, as a practical matter, disposition of Airgas' claim for injunctive relief against Cravath, if successful, will deprive Air Products of the benefit of Cravath's counsel. While no doubt, given time, Air Products could engage capable substitute counsel, that determination would have been addressed in this Court without Air Products' participation. As the New Jersey Appellate Division has stated:

> It follows that an action aimed at disqualifying an opposing party's counsel should be filed in the State

> where the underlying dispute is being litigated, so that the opposing party may readily participate to defend its right to 'freely choose' its counsel. It is manifestly inappropriate to attempt, as plaintiffs have done here, to achieve disqualification of opposing counsel by filing a lawsuit in another State.

Camden Iron & Metal, Inc. v. Klehr, Harrison, Harvey, Branzberg & Ellers, LLP, 894 A.2d 94, 99 (N.J. Super. Ct. App. Div. 2006) (internal citation omitted).

Three, public policy concerns implicating federalism and comity attach to the decision to allow a federal court to disqualify Cravath from appearing as counsel for a litigant in a state court proceeding. Historically, the credentialing and discipline of lawyers has been a state function. In this case, Delaware courts have adopted, with some modifications, the Model Rules of Professional Conduct to govern the conduct of counsel appearing before it. Appeal of Infotechnology, Inc., 582 A.2d 215, 216-17 (Del. 1990) (citing the Delaware Rules of Professional Conduct as the rules governing the disciplinary process in Delaware courts).

It would constitute an unprecedented intrusion of federal power upon a local court for this Court to dictate to the Delaware Chancery Court that a law firm [Cravath] was disqualified from representing a litigant [Air Products] in a proceeding before it. Airgas has not produced any authority, and the Court has not located any, where such an extreme result has obtained. See e.g., Dyntel Corp. v. Ebner, 120 F.3d 488, 489, 491

(4th Cir. 1997); Liberty Mutual Ins. Co. v. Pietragallo, Bosick & Gordon, No. 94-6682, 1995 WL 517613, at *3 (E.D. Pa. Aug. 25, 1995); Camden Iron, 894 A.2d at 99; Airbus S.A.S. v. Wilmer Cutler Pickering Hale & Dorr, LLP, No. 06-4261, 2007 WL 5084428, at *3 (D.C. Super. Jan. 10, 2007) (all denying requests to bar law firm from representing client in litigation in another forum).

Moreover, the Delaware Chancery Court is bound to apply Delaware law to the issue of disqualification. While the events giving rise to the claim of disqualification mostly transpired in Pennsylvania, under the Pennsylvania Rules of Professional Conduct, issues of disqualification of counsel for a violation of the Pennsylvania Rules of Professional Conduct shall be adjudicated under the rules of conduct for the jurisdiction in which the disqualification is being sought, see Pa. R.P.C. 8.5(b)(1), in this case Delaware.

Four, the need to avoid piecemeal litigation and to promote the efficient administration of justice also weigh in favor of the stay. The disqualification of Cravath is only a preliminary bout in this litigation cartel. The main issue remains whether Airgas and its Board of Directors breached their fiduciary duty. To create an alternate forum for the subsidiary issue of considering the disqualification of Cravath would be tantamount to the proverbial tail wagging the dog.

9

Airgas counters that the Delaware Action only deals with disqualification of Cravath in litigation matters, and that, by contrast, the Federal Action implicates the prospect of Cravath's disqualification in all Air Products' matters, including transactional matters.  Airgas' argument is now moot since Cravath has agreed, before the Court, that should the Delaware Chancery Court determine the firm is disqualified from representing Air Products in the Delaware Action, it will cease representation of Air Products in all related transactional matters as well.

Airgas also argues that the case is controlled by the Pennsylvania Supreme Court's decision in <u>Maritrans GP Inc. v. Pepper, Hamilton & Scheetz</u>, 602 A.2d 1277 (Pa. 1992).  In <u>Maritrans</u>, the Pennsylvania Supreme Court held that an attorney's subsequent representation of a client, whose interests were materially adverse to a former client in a matter substantially related to that in which he or she represented the former client, was an impermissible conflict of interest, giving rise to breach of a fiduciary duty. 602 A.2d at 1282.  There, the Pennsylvania Supreme Court upheld an injunction barring the law firm Pepper, Hamilton & Scheetz ("Pepper") from serving as labor counsel for competitors of its former client, Maritrans, who were located in New York.  According to Airgas, <u>Maritrans</u> stands for the proposition that a Court in one jurisdiction may enjoin a lawfirm

from representing a client in litigation pending in another jurisdiction.

<u>Maritrans</u>, however, is distinguishable.  In <u>Maritrans</u>, there was no pending litigation relating to Maritrans' competitors in New York at the time the litigation was proceeding in Pennsylvania.  Therefore, under the procedural posture of the case, the only way the claim that Pepper could be prevented from representing Maritrans' competitors in New York, was through an order of the Pennsylvania Court.

Finally, although the Court will not formally abstain, i.e., decline to exercise jurisdiction in this case, the rationale underlaying the stay in this case is congruent with the principles of abstention.  These principles are deeply rooted in a concern for federalism and comity.  As to federalism, the Third Circuit has noted, quoting in part from a leading Supreme Court case:

> [F]ederal courts have recognized circumstances under which they will decline to adjudicate cases even though they have jurisdiction under the Constitution and statutes. These circumstances are loosely gathered under discrete concepts of abstention named after leading Supreme Court cases. The Court has said: 'The various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases. Rather, they reflect a complex of consideration designed to soften the tensions inherent in a system that contemplates parallel judicial processes.'

<u>Chiropractic Am. v. La Vecchia</u>, 180 F.3d 99, 103 (3d Cir. 1999) (quoting <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 11 n.9

11

(1987)).

As to comity, it has stated, "[a]t the risk of over-simplification, we can say that these reasons come within the rubric of comity, or the idea 'that certain matters are of state concern to the point where federal courts should hesitate to intrude; and they may also concern judicial economy, the notion that courts should avoid making duplicate efforts or unnecessarily deciding difficult questions.'" Id. (quoting Bath Mem'l Hosp. v. Maine Health Care Fin. Comm'n, 853 F.2d 1007, 1012 (1st Cir. 1988)).

The court is cognizant that it is charged with the "unflagging obligation" to exercise jurisdiction in a case properly before it. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). However, as the Supreme Court has repeated, under proper circumstances, staying an action "'does not constitute abnegation of judicial duty. On the contrary, it is a wise and productive discharge of it. There is only postponement of decision for its best fruition.'" Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 721 (1996) (quoting Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 29 (1959)).

In this case, a brief departure from this "unflagging obligation" to exercise jurisdiction is entirely consistent with the underlying principles undergirding abstention. Under the

brief stay mandated by the Court, a Delaware court, under Delaware law, will be able to decide the dispute between two Delaware corporations as to whether a law firm is disqualified from representing one of the two Delaware corporations in litigation pending before the Delaware Chancery Court.

**IV. Conclusion**

For all of these reasons, the Court will grant a temporary stay to allow the Delaware Court to determine whether Cravath is disqualified from representing Air Products in the Delaware Action. An appropriate order follows.