IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
AIRGAS, INC.,                     :    CIVIL ACTION
                                  :    NO. 10-612
          Plaintiff,             :
                                  :
          v.                      :
                                  :
CRAVATH, SWAINE & MOORE LLP      :
                                  :
          Defendant.             :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          AUGUST 3, 2010

## I. INTRODUCTION

Defendant Cravath, Swaine and Moore LLP ("Cravath") moves for judgment on the pleadings arguing that the pleadings fail to establish that Cravath's conduct caused Plaintiff to suffer any legally cognizable injury. Plaintiff Airgas, Inc. ("Airgas"), opposes the motion. For the following reasons, the motion will be denied.

## II. BACKGROUND[1]

Cravath is a New York-based law firm. Airgas is a Delaware corporation with its principal place of business in Pennsylvania. Air Products and Chemicals, Inc. ("Air Products")

---

[1]    The Court previously discussed the relevant background of this case. See Airgas, Inc. v. Cravath, Swaine & Moore LLP, No. 10-612, 2010 WL 624955, at *1-2 (E.D. Pa. Feb. 22, 2010).

is a Delaware corporation with its principal place of business in Pennsylvania, located forty miles from Airgas.  Airgas and Air Products are competitors in the industrial, packaged gases business.  Cravath has provided legal representation to Air Products for over forty years.  Meanwhile, Airgas was a client of Cravath for nine years.

The parties hotly dispute the nature of Cravath's representation of the parties, the scope of the representation and when Cravath's representation of Airgas came to an end.  Also in dispute is the nature of the information Cravath learned while representing Airgas.

These issues came to the forefront in February 2010 when Air Products, with the assistance of Cravath, sought to engage Airgas in discussions about a possible merger of the two companies.  On February 4, 2010, when these initial overtures were rejected by Airgas, Air Products publicly announced an all cash offer to purchase all outstanding Airgas shares.  That same day, Air Products filed suit in the Delaware Chancery Court against Airgas and its Board of Directors alleging that their failure to consider Air Products' offer was a breach of fiduciary duty ("the Delaware Action").  Cravath is representing Air Products in that action.

The next day, on February 5, 2010, Airgas sued Cravath in the Philadelphia Court of Common Pleas for damages and also a

special injunction (TRO) and preliminary injunction restraining

Cravath from representing Air Products in the Delaware Action and

from otherwise representing Air Products in the proposed

acquisition of Airgas (the "Pennsylvania Action").  Airgas claims

that Cravath violated Rule 1.7 of the Pennsylvania Rules of

Professional Conduct[2] by simultaneously representing Airgas in

financing related matters and advising Air Products on a

potential takeover of Airgas.  As discussed herein, the

Pennsylvania Supreme Court in <u>Maritrans</u> established that a cause

of action may be maintained against an attorney for breach of his

---

[2]     Rule 1.7 states: Conflict of Interest: Current Clients

(a) Except as provided in paragraph (b), a lawyer shall
not represent a client if the representation involves a
concurrent conflict of interest. A concurrent conflict of
interest exists if: (1) the representation of one client
will be directly adverse to another client; or (2) there
is a significant risk that the representation of one or
more clients will be materially limited by the lawyer's
responsibilities to another client, a former client or a
third person or by a personal interest of the lawyer.

(b)  Notwithstanding  the  existence  of  a  concurrent
conflict of interest under paragraph (a), a lawyer may
represent a client if: (1) the lawyer reasonably believes
that the lawyer will be able to provide competent and
diligent representation to each affected client; (2) the
representation  is  not  prohibited  by  law;  (3)  the
representation does not involve the assertion of a claim
by one client against another client represented by the
lawyer in the same litigation or other proceeding before
a tribunal; and (4) each affected client gives informed
consent.

Pa. R. P. C. 1.7.

or her fiduciary duty to a client through concurrent
representation that results in a conflict of interest.  <u>Maritrans</u>
<u>GP, Inc. v. Pepper, Hamilton, & Scheetz</u>, 602 A.2d 1277 (Pa.
1992).

Airgas's complaint sets forth three counts, each
premised on an alleged breach of fiduciary duty, seeking (1) an
injunction precluding Cravath from representing Air Products in
any matter related to a proposed transaction with Airgas, (2)
damages, and (3) punitive damages, respectively. (Compl. ¶¶
52-73.)  To support its claim for breach of fiduciary duty,
Airgas claims that it has suffered four discrete injuries as a
result of Cravath's alleged misconduct.

First, Airgas alleges that, "[a]s a proximate result of
Cravath's wrongful conduct, Airgas has been required to retain
new outside counsel to seek to enforce Cravath's ethical and
fiduciary obligations, and has incurred legal fees and costs in
doing so, which legal fees and costs should be reimbursed by
Cravath." (<u>Id.</u> ¶ 68.)  Second, Airgas contends that it was
"proximately damaged to the extent it has been required to retain
replacement outside counsel to develop an understanding of
Airgas's financing needs and objectives in order to provide legal
services concerning the Airgas credit facilities and financing
requirements that would otherwise have been provided by Cravath."
(<u>Id.</u> ¶ 69.)  Third, Airgas alleges that it has been "proximately

4

damaged in that it has been unable to obtain new financing
because of Air Products' takeover offer, and Cravath, Air
Products' counsel with respect to the takeover, knew that the
timing of Air Products' offer letter could negatively affect
Airgas's ability to seek new financing." (Id. ¶ 70.)  Fourth,
Airgas seeks disgorgement of $322,800 in fees paid to Cravath in
October 2009, during the time period Airgas alleges that Cravath
simultaneously was working for and against its client Airgas.
(Id. ¶ 10.)

Airgas, in the Pennsylvania Action, previously sought
to enjoin Cravath from representing Air Products in any matter
related to the attempted acquisition of Airgas, including banning
Cravath from representing Air Products in the Delaware Action.
On February 12, 2010, Cravath removed the Pennsylvania Action to
this Court (the "Federal Action").  Immediately thereafter,
Cravath moved for this Court to abstain and/or stay the Federal
Action pending resolution of the issue of disqualification in the
Delaware Action.

On February 22, 2010, this Court granted Cravath's
motion to stay the action.  See Airgas, Inc. v. Cravath, Swaine &
Moore LLP, No. 10-612, 2010 WL 624955 (E.D. Pa. Feb. 22, 2010).
On March 5, 2010, Chancellor Chandler determined that under
Delaware law, Airgas had not demonstrated that Cravath's behavior
sufficiently prejudiced the fairness of the proceedings to

warrant the remedy of disqualification. (<u>See</u> Ex. D to Def.'s Mem. at 10-11.)[3]

On May 26, 2010, this Court held a status conference with the parties.  The Court was informed that the Delaware Action is scheduled for trial starting on October 4, 2010.  (Hrg. Tr. at 6, May 26, 2010.)  The Court ordered that discovery be stayed until October 15, 2010, but that Cravath could file the instant Rule 12(c) motion in the interim.  (<u>Id.</u> at 21-22.)  A status and scheduling conference currently is scheduled for October 15, 2010.

## III. LEGAL STANDARD

Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed-but early enough not to delay trial." Fed. R. Civ. P. 12(c).  Where, as here, a Rule 12(c) motion challenges the plaintiff's failure to state a claim upon which relief can be granted, the court evaluates the motion under the same standard as a motion to dismiss pursuant to Rule 12(b)(6).  <u>Turbe v. Gov't of V.I.</u>, 938 F.2d 427, 428 (3d Cir. 1991); <u>Foreman v. Lowe</u>, 261 F. App'x 401, 403 n.1 (3d Cir. 2008).

---

[3]     The Delaware Chancery Court was explicit that its ruling did not resolve whether Cravath breached a rule of professional responsibility or its fiduciary duty of loyalty to Airgas. (<u>See</u> Ex. D to Def.'s Mem., at 8-9) ("Although the parties strenuously disagree regarding the propriety of Cravath's role in connection with its previous work for Airgas while it was simultaneously engaged as counsel for Air Products . . . I need not formally decide that question in order to dispose of the motion and objections before me.")

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Factual allegations "that are 'merely consistent with' a defendant's liability," or that permit the court to infer no more than "the mere possibility of misconduct" are not enough. Id. at 1949-50 (quoting Twombly, 550 U.S. at 557).  Rather, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." Id. at 1949.  In evaluating a motion to dismiss, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009); see also Iqbal, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Moreover, when deciding a Rule 12(c) motion for judgment on the pleadings, a district court must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party.  Green v. Fund Asset Mgmt., L.P., 245 F.3d 214, 220 (3d Cir. 2001).

**IV. ANALYSIS**

### A. Applicable Law

Airgas believes that Pennsylvania law applies to the case and instant motion.  Cravath believes that either New York or Delaware law applies to the larger action; however, it applied Pennsylvania law in the instant motion because it "steadfastly maintains its actions were proper under the Pennsylvania ethics rules, and . . . any other applicable rules."  (Def.'s Mot. at 9 n.3.)  Thus, Cravath has agreed that, "for the purposes of this motion, [] the Court may evaluate Airgas's claim under Pennsylvania law." (Def.'s Reply. at 3 n.2)

Cravath does not argue that analysis of the breach of fiduciary claim would produce different results under Pennsylvania, New York or Delaware law.  Indeed, Cravath claims Airgas's claims fail under all three state laws.  Accordingly, the Court need not conduct a conflict of laws analysis to determine which state's law governs. Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006) (finding that where applying the laws of both jurisdictions would produce an identical result, a court should not engage in a choice of law analysis) (citing Williams v. Stone, 109 F.3d 890, 893 (3d Cir. 1997)).

As neither party has cited to a potential conflict between these three forums, and the Court finds that the basic elements required under Pennsylvania, New York and Delaware are

identical,[4] the Court finds that no conflict exists and the law

of the forum controls.  See Lucker Mfg. v. Home Ins. Co., 23 F.3d

808, 813 (3d Cir. 1994) (avoiding choice of law question where

neither party pressed the issue and there was no apparent

conflict between the laws of the forums) (citing Melville v.

American Home Assur. Co., 584 F.2d 1306, 1311 (3d Cir. 1978)

(warning courts to avoid dicta on conflicts questions when not

put in issue by the parties)).

### B. Breach of Fiduciary Duty

---

[4]     To establish a breach of fiduciary duty under
Pennsylvania law, plaintiff must first prove that a fiduciary
relationship existed between the parties.  Then, plaintiff must
prove "(1) that the defendant negligently or intentionally failed
to act in good faith and solely for the benefit of plaintiff in
all matters for which he or she was employed; (2) that the
plaintiff suffered injury; and (3) that the agent's failure to
act solely for the plaintiff's benefit . . . was a real factor in
bring[ing] about plaintiff's injuries." McDermott v. Party City
Corp., 11 F. Supp. 2d 612, 626 n.18 (E.D. Pa. 1998) (Robreno, J.)
(citing Pa. Std. Jury Instructions (Civ.) § 4.16 (1991); see also
Dinger v. Allfirst Fin., Inc., 82 F. App'x 261, 265 (3d Cir.
2003); Health Robotics, LLC v. Bennett, No. 09-0627, 2009 WL
5033966, at *2 (E.D. Pa. Dec. 22, 2009); Pa. Std. Jury
Instructions (Civ.) § 4.16 (3d ed. 2005).

        To establish a claim for breach of fiduciary duty under
New York law, a plaintiff must prove (1) the existence of a
fiduciary relationship; (2) misconduct by defendant constituting
a breach of its fiduciary duty to plaintiff; and (3) damages to
plaintiff directly caused by defendant's misconduct. See Berman
v. Sugo LLC, 580 F. Supp. 2d 191, 204 (S.D.N.Y. 2008).

        To establish a claim for breach of fiduciary duty under
Delaware law, a plaintiff must prove: (1) that a fiduciary duty
existed and (2) that the defendant breached that duty.  ZRII, LLC
v. Wellness Acquisition Group, Inc., No. 4374, 2009 WL 2998169
(Del. Ch. Sept. 21, 2009).

### 1. Elements of a Breach of Fiduciary Duty claim

To establish a breach of fiduciary duty under Pennsylvania law, Airgas must first prove that a fiduciary relationship existed between the parties.  Then, Airgas must prove "'(1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) that the plaintiff suffered injury; and (3) that the agent's failure to act solely for the plaintiff's benefit . . . was a real factor in bring[ing] about plaintiff's injuries.'" McDermott, 11 F. Supp. 2d at 626 n.18 (citing Pa. Std. Jury Instructions (Civ.) § 4.16 (1991).

Here, Airgas has pleaded that Cravath allegedly breached its fiduciary duty of loyalty to Airgas by simultaneously and secretly representing another party whose interests were directly adverse to Airgas.  Airgas relies on the Maritrans case where the Pennsylvania Supreme Court held that an attorney's subsequent representation of a client, whose interests were materially adverse to a former client in a matter substantially related to that in which he or she represented the former client, was an impermissible conflict of interest, giving rise to breach of a fiduciary duty.  Maritrans, 602 A.2d at 1283-85.  The Pennsylvania Supreme Court reasoned that an action at law was available because the common-law fiduciary duty imposed

10

on attorneys prohibited them from engaging in impermissible conflicts of interest.  Id. at 1283; see also Gorski v. Smith, 812 A.2d 683, 711 (Pa. Super. Ct. 2002).

Airgas has pleaded its claim in detail and alleged facts that Cravath disregarded its duty of undivided loyalty to its client Airgas by accepting, without prior disclosure, a representation of Air Products designed explicitly to help Air Products take over Airgas.  Airgas alleges that at the same time (August - October 2009) that Airgas had engaged Cravath and assumed its undivided loyalty, Cravath was covertly advising Air Products on how to end Airgas's independent corporate existence. (Compl. ¶¶ 7, 13-16, 23, 51.)  This pleading sufficiently sets forth a claim for breach of fiduciary duty. See Maritrans, 602 A.2d at 1283-85; see also Motorup Corp. v. Galland, Kharasch & Garfinkle, P.C., No. 00-2212, 2001 WL 34368760, at *5 (E.D. Pa. Dec. 4, 2001) ("Plaintiff asserts that Defendants owed a fiduciary duty to [plaintiff] and breached that duty by having divided loyalties and by placing the interests of National Media above and in conflict with the interests of [plaintiff], to the detriment of [plaintiff]. Plaintiff has therefore adequately pled an action for breach of fiduciary duty.").

**2. Injury and Causation**

Airgas alleges that Cravath's representation of Air

Products in the takeover bid and the related Delaware Action caused Airgas to suffer four specific harms: (1) attorneys' fees related to this litigation; (2) the cost of finding replacement counsel for Cravath; (3) Airgas's inability to obtain new financing because of Air Products' takeover offer; and (4) disgorgement of fees paid to Cravath.  (Compl. ¶¶ 68-70.)

Cravath's main argument is that Airgas must prove harm from the alleged breach of fiduciary duty; yet, the complaint fails to plead that Cravath's actions caused any legally cognizable injury.  See Rizzo v. Haines, 555 A.2d 58, 68 (Pa. 1989) ("The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm - not yet realized - does not suffice to create a cause of action for negligence." (Internal quotations omitted)).  Cravath also argues that each of the alleged harms is insufficient to state a claim for relief because each is either speculative, not plausibly attributable to Cravath's alleged misconduct or does not constitute harm as a matter of law.  Each of Airgas's alleged items of damages is examined in turn.

### i. Attorneys' Fees

Airgas alleges that "[a]s a proximate result of Cravath's wrongful conduct, Airgas has been required to . . . enforce Cravath's ethical and fiduciary obligations, and has incurred legal fees and costs in doing so, which legal fees and

costs should be reimbursed by Cravath." (Compl. ¶ 68.)  Airgas
further pleads that it repeatedly objected to Cravath's
representation of Air Products in its attempt to acquire Airgas.
(Id. ¶¶ 19, 21, 27, 34-38, 40.)  Airgas also pleads that Cravath
ignored Airgas's repeated objections to Cravath's representation
of Air Products (id. ¶¶ 29-30, 39, 42, 47); and, after keeping
its representation of Air Products secret for months, Cravath
chose to drop Airgas in favor of a higher paying client once the
conflict was finally disclosed. (Id. at ¶¶ 48-50.)  Consequently,
Airgas brought this action to enjoin Cravath's conduct and seek
redress.

Cravath responds that: (1) Airgas's request for costs
incurred in this litigation amounts to a request for attorneys'
fees and violates the American Rule that each party bears its own
legal expenses; (2) to the extent that Airgas seeks to recover
costs incurred in connection with its unsuccessful attempt to
disqualify Cravath from the litigation pending in Delaware, it is
plainly not entitled to relief; and (3) the incurred expenses
related to the costs of litigation are insufficient to state a
plausible claim of injury.  See Merlino v. Delaware County, 728
A.2d 949, 951 (Pa. 1999) (noting the rule that there can be no
recovery of attorneys' fees from an adverse party, absent an
express statutory authorization, a clear agreement by the parties
or some other established exception).

Here, Airgas seeks attorneys' fees as compensatory damages and not as reimbursement of litigation expenses.  In Axcan, a case that both parties heavily rely on, a client sought payment of the attorneys' fees it incurred while seeking an injunction against its attorney, who had violated its fiduciary duties by engaging in an impermissible conflict of interest. Axcan Scandipharm, Inc. V. Reed Smith, LLP, 2007 Phila. Ct. Com. Pl. LEXIS 78, at *9 (Pa. Com. Pl. Mar. 26, 2007).  The Philadelphia Court of Common Pleas found that "[s]uch damages may be awarded to address the concrete loss that [Axcan] has suffered by reason of [its attorney's] wrongful conduct."  Id.  The court reasoned that "Axcan will never be made whole without payment of those attorneys fees it was forced to incur [to protect its interests]. In this respect, Pennsylvania law is more akin to the law of New Jersey [which does not follow the American rule]."[5]

Similarly, in Fidelity Bank v. Com. Marine and Gen.

---

[5]    Cravath emphasizes that Airgas seeks to recover costs incurred in connection with its unsuccessful attempt to disqualify Cravath from the litigation pending in Delaware. Whereas, in Axcan, the court allowed a former client to recover the costs that it incurred in successfully moving to disqualify its former law firm from prior litigation.  Cravath argues there is a sharp distinction between the recovery of fees incurred in making a successful motion for disqualification in prior litigation with the legal fees incurred in suing for a breach of fiduciary duty. "[I]n this case, Axcan is not trying to recover its attorneys fees from its adversary. It is not claiming that it is entitled to the fees it has incurred in this action, where Reed Smith is Axcan's adversary."  Axcan, 2007 Phila. Ct. Com. Pl. LEXIS 78, at *7.

Assur. Co., Ltd., 592 F. Supp. 513 (E.D. Pa. 1984), Judge Pollak denied a counterclaimant defendant's motion for judgment on the pleadings, finding, inter alia, that the counterclaimant plaintiff had pleaded a "legally cognizable injury" by alleging that it had "incurred costs in asserting its rights" to pursue its claim of fiduciary breach.  As Judge Pollak stated, "Horizon's costs incurred in this action . . . form cognizable damages in this suit for breach of fiduciary duty." Id. at 529-30.[6]

In this case, Airgas alleges it was forced to retain counsel to protect itself against Cravath's alleged breach of loyalty and after repeated requests for Cravath to cease the concurrent representation.  Airgas argues the retention of outside counsel was made necessary only because of Cravath's alleged breach of its fiduciary duties in simultaneously working for and against Airgas.

Under these averments, the Complaint states a cause of action and judgment on the pleadings is not appropriate here.

### ii. Replacement Counsel

Airgas also alleges that it was damaged by having to

---

[6]    Cravath argues that Fidelity does not apply in this case because that court found that Horizon's legal costs constituted injury because Fidelity actively misled Horizon into incurring those costs.  Fidelity, 592 F. Supp. at 529-30.  To the extent that the facts in this case differ from those in Fidelity, that is a defense which Cravath may assert at trial.

hire new counsel to replace Cravath, which had been Airgas's financing counsel for the last decade. (Compl. ¶ 69.)  Airgas alleges that as of October 2009, Airgas was an active client of Cravath and was beginning to work with Cravath in a series of new financing transactions that would shortly occur. (Id. ¶ 14.) Airgas also alleges that Cravath was aware that Airgas was about to engage it for these financings, (id. ¶ 24), as it had been engaged for the past nine years. (Id. ¶¶ 7, 14.)  Airgas alleges that Cravath dropped Airgas as a client "like a hot potato" in an attempt to cure an impermissible conflict of interest.  (Pl.'s Resp. at 15-16.)  Thus, Airgas claims it was forced to incur the cost of hiring replacement counsel to handle its financings.

First, Cravath disagrees with the factual predicate for Airgas's claim.  Cravath argues that Airgas could not have had any legitimate expectation that Cravath would serve as its counsel in perpetuity and there was no retainer or other agreement that existed between the parties that would have prevented Cravath from declining to accept future financing work from Airgas.  Thus, Airgas could not have reasonably expected that Cravath would accept any and all future financing work from Airgas.  Moreover, had Airgas simply chosen to hire new financing counsel - as it had every right to do - it would have incurred the same costs that it now claims as injury.

Second, Cravath makes a causation argument that because

16

the alleged harm would have occurred regardless of whether Cravath's decision to decline future work from Airgas was proper, that purported harm is not attributable to any alleged breach of fiduciary duty.

Cravath's arguments that Airgas could not "have had any legitimate expectation that Cravath would serve as its counsel in perpetuity" or that Airgas could not have "reasonably expected that Cravath would accept any and all future financing work from Airgas[]" are conclusory allegations not appropriate for a motion for judgment on the pleadings. (Def.'s Mem. at 15.)  Questions of fact, including whether Airgas had a reasonable expectation of continued representation by Cravath, are not to be determined at this juncture.  See, e.g., Winslow v. The Borough of Malvern Pa., No. 08-1890, 2009 WL 4609590, at *7 (E.D. Pa. Dec. 7, 2009) (denying defendant's motion to dismiss a battery claim because "reasonableness is a question of fact for a jury to decide"); see also Motorup, 2001 WL 34368760, at *5 (finding that a factual disagreement was inappropriate on a 12(b)(6) motion to dismiss, stating that "these diametrically opposed versions of the facts must be tested after full and complete discovery, not by a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).").  At this stage of the litigation, the Court must only consider whether the claim was properly pleaded, not whether the facts pleaded are true.

Cravath also argues that Airgas may have one day decided to use different counsel than Cravath, or that one day Cravath may have decided to cease representation of Airgas. Based on this conjecture, Cravath argues that Airgas would have borne the costs of hiring and training replacement counsel regardless of Cravath's alleged fiduciary breach.  This argument misses the mark.  It is not Airgas's burden to plead how the damages would have been different had Cravath not engaged in its alleged conflict of interest and alleged breach of fiduciary duty.  See, e.g., Amato v. KPMG LLP, 433 F. Supp. 2d 460, 471 (M.D. Pa. 2006) (stating, in response to defendant's argument that plaintiff's claims for damages for attorney's breach of fiduciary duty would have accrued even without the breach: "Plaintiffs need not specifically plead how the alleged damages at issue would have been avoided had Sidley Austin conducted itself differently after Plaintiffs entered the transaction in which Sidley Austin's fiduciary obligations allegedly arose."), vacated in part on other grounds by Amato v. KPMG LLP, 2006 WL 2376245 (M.D. Pa. Aug. 14, 2006)).  Ultimately, the case turns on "what it was" i.e., that which Cravath is alleged to have done, not "what might have been" i.e., that which Airgas may or may not have decided to do.

### iii. Inability to Obtain Financing

Airgas also pleads that it has been "proximately

18

damaged in that it has been unable to obtain new financing because of Air Products' takeover offer, and Cravath, Air Products' counsel with respect to the takeover, knew that the timing of Air Products' offer letter could negatively affect Airgas's ability to seek new financing.  Moreover, as Airgas's long-time counsel, Cravath knew that Airgas was planning to seek new financing around the time Air Products [began its efforts to acquire Airas.]"  (Compl. ¶ 70.)[7]

This injury is properly pleaded, because Airgas provides sufficient facts from which the Court can conclude that it is plausible that Cravath's representation of Air Products, simultaneous with and adverse to its representation of Airgas, enabled Air Products - allegedly armed with Cravath's intimate knowledge of Airgas's financing plans - to launch its takeover attack at a time when Airgas was planning for additional financing or refinancing.

Cravath attempts to undermine this pleaded injury by pointing to two financing transactions on which Airgas closed in March 2010.  (Def.'s Mem. at 16-17.)  This argument fails, because it does not consider - nor can it, at this stage of the proceedings - whether these subsequent financings were on the

---

[7]     Airgas also attached to its Complaint a New York Times article concerning Air Products' public offer to acquire Airgas which noted that "[b]y making its offer now, Air Products is hoping to seize upon some current weakness in Airgas's financial health." (Compl. ¶ 49; Compl. Ex. D.)

same terms as Airgas would have obtained in the absence of
Cravath's representation of Airgas's pursuer.  The documents
Cravath attaches as support for its argument do not indicate
whether these March 2010 financings were those financings in
which Airgas was interested and could have obtained if Cravath
had not allegedly breached its duty.  These questions implicate
issues of fact that cannot be resolved in a motion under Rule
12(c).[8]

### iv. Disgorgement

Airgas's allegations state a claim of breach of
fiduciary duty where the breach itself is recognized to be the
injury and the damages are the forfeiture of the fees paid to the
breaching attorney.  In its Complaint, Airgas alleges with
factual specificity, that in October 2009 Cravath issued an
invoice to Airgas in the amount of $322,800 and that this sum was
promptly paid. (Compl. ¶ 10.)  Airgas further alleges that at
this time Cravath was simultaneously working for and against its

---

[8]     Moreover, Cravath's argument that these alleged damages
are too speculative also fails.  The "test of whether damages are
remote or speculative has nothing to do with the difficulty in
calculating the amount, but deals with the more basic question of
whether there are identifiable damages. . . . Thus, damages are
speculative only if the uncertainty concerns the fact of damages
rather than the amount." Rizzo, 555 A.2d at 68 (emphasis added,
citation omitted).  Taken as true, Airgas's allegations clearly
plead that it lost financing opportunities because of Cravath's
breach of loyalty; the only issue left open is the amount of
damage this caused, not the fact of damage.  Thus, Airgas has
properly pleaded lost financing as one of its components of
damages.

client Airgas.  Airgas specifically sets forth the facts of that alleged concurrent representation at Paragraphs 13-16, 21, 23, 53 and 56 of the Complaint.

The Pennsylvania Supreme Court has recognized that a client is entitled to return of fees paid to an attorney who has breached his or her fiduciary duties.  In <u>Maritrans</u>, the Pennsylvania Supreme Court stated: "[c]ourts throughout this country have ordered the disgorgement of fees paid or the forfeiture of fees owed to attorneys who have breached their fiduciary duties to their clients by engaging in impermissible conflicts of interest."  602 A.2d at 1285 (citing cases in which forfeiture was ordered).  <u>See also</u> <u>Synthes (USA) v. Globus Med., Inc.</u>, No. 04-1235, 2007 WL 2043184, at *11 (E.D. Pa. Jul. 12, 2007) ("Under Pennsylvania law, breaches of fiduciary duty are remediable by returning to the complainant the benefit taken by the offending party") (citing <u>Sack v. Feinman</u>, 413 A.2d 1059 (Pa. 1980)); <u>Axcan</u>, 2007 Phila. Ct. Com. Pl. LEXIS 78, at *12-13 (recognizing disgorgement as a theory of damages for a breach of fiduciary duty claim but refusing to extend it to a plaintiff who had a third party pay the fees of an attorney who engaged in an impermissible conflict of interest).

When a party claiming breach of fiduciary duty has pleaded payment of fees to the breaching attorney, there is no requirement to plead further injury or damages.  A pleading of

the breach itself is sufficient to state a claim.  Feinberg v.
Eckelmeyer, No. 09-1536, 2009 WL 4906376, at *10 (E.D. Pa. Dec.
16, 2009) ("A plaintiff alleging a breach of fiduciary duty need
not show the existence of damages other than the offending
party's receipt of a benefit that should have inured to the
complainant."); Synthes, 2007 WL 2043184, at *11 (finding that
injury element of breach of fiduciary duty claim was adequately
pleaded without provision of information such as lost profits,
because a party pleading breach of fiduciary duty need not plead
more than "the offending party's receipt of a benefit that should
have inured to the complainant.").

Because Airgas has pleaded payment of fees to Cravath
for services rendered while Cravath was simultaneously working
both for and against Airgas, Airgas has properly pleaded a claim
for breach of fiduciary duty.

## C. Punitive Damages

Cravath argues that because Airgas's complaint fails to
state a claim for breach of fiduciary duty, its punitive damages
claim must also fail.  See e.g., DiGregorio v. Keystone Health
Plan East, 840 A.2d 361, 370 (Pa. Super. Ct. 2003) ("If no cause
of action exists, then no independent action exists for a claim
of punitive damage[s].")

However, as the Court has already explained, Airgas has
properly pleaded a claim for breach of fiduciary duty against

Cravath, and therefore Airgas's claim for punitive damages cannot be dismissed at this stage of the litigation.

**V. CONCLUSION**

For the reasons discussed above, Cravath's motion for judgment on the pleadings is denied.  An appropriate order follows.